IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

TOMI WHITE BRYAN,                  )
individually and on behalf         )
of all others similarly           )
situated,                          )
                                   )
            Plaintiff,             )
                                   )
        v.                         )     CIVIL NO. 1:02CV00228
                                   )
BELLSOUTH TELECOMMUNICATIONS,      )
INC.,                              )
                                   )
            Defendant.             )

MEMORANDUM OPINION

BULLOCK, District Judge

On September 20, 2005, Defendant, BellSouth
Telecommunications, Inc. ("BellSouth"), filed a motion for
injunctive relief to prevent Plaintiff, Tomi White Bryan
("Bryan"), individually and on behalf of all others similarly
situated, from pursuing her claim under the North Carolina Unfair
and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. §§
75-1.1, et seq., in state court.  In response, Bryan filed a
motion to dismiss BellSouth's motion for permanent injunction.
For the reasons set forth below, Bryan's motion to dismiss will
be denied, and BellSouth's motion for injunctive relief will be
granted.

FACTS

On February 22, 2002, Bryan filed suit in the Superior Court of Guilford County, North Carolina, against BellSouth alleging three state law causes of action.[1] BellSouth properly removed the suit to the Middle District of North Carolina, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis that Bryan's claims raised federal questions by challenging BellSouth's tariff. On June 4, 2002, Bryan filed her First Amended Complaint in federal court, challenging Defendant's collection of an allegedly excessive Federal Universal Service Charge ("FUSC") from its North Carolina customers as well as the imposition of charges without full disclosure of all material facts surrounding the charge. The First Amended Complaint, like the original complaint, included three causes of action: (1) a claim for violation of the UDTPA ("Count A"); (2) a claim for unjust enrichment and restitution ("Count B"); and (3) a claim for breach of contract ("Count C").

---

[1] Bryan sought to represent a class of individuals who are BellSouth customers and who paid a BellSouth fee denoted as the Federal Universal Service Charge ("FUSC"). As a provider of interstate public telecommunications services, BellSouth is required by law to contribute a portion of its revenues to the federal Universal Service Fund ("USF"). See 47 U.S.C. § 254; Bryan v. BellSouth Commc'ns, 377 F.3d 424, 425 (4th Cir. 2004). The Federal Communications Commission ("FCC") permits carriers such as BellSouth to recover their contributions to the USF from their customers, either through increased rates or through a separate line item on the customers' bills. Bryan, 377 F.3d at 425. Billing practices such as recovery of USF contributions are established in a carrier's "Schedule of Charges," also known as its "tariff." See 47 U.S.C. § 203; Bryan, 377 F.3d at 426. A carrier's tariff must be filed with the FCC and kept open for public inspection. 47 U.S.C. § 203(a); Bryan, 377 F.3d at 426. BellSouth recovered its USF contribution through a line item fee labeled as the FUSC on its customers' bills. Bryan, 377 F.3d at 426.

On June 10, 2002, Bryan filed a motion to remand the suit to state court.  On July 3, 2002, BellSouth filed a motion, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the Complaint for failure to state a claim upon which relief can be granted.  In considering those motions, the court first analyzed its jurisdiction, deciding that the unjust enrichment and restitution claim (Count B) and the breach of contract claim (Count C) directly challenged the validity of a rate contained in a tariff and, therefore, raised federal questions.  The court also concluded that Bryan's claims alleging misrepresentations and failure to disclose certain information (Count A) did not attack the validity of the tariff and, therefore, were styled appropriately as state law claims.  Nevertheless, the state law claims in Count A fell under the district court's supplemental jurisdiction.  See 28 U.S.C. § 1367.

The court then turned to BellSouth's 12(b)(6) motion.  Based on the filed-rate doctrine,[2] the court dismissed those claims (Counts B and C) that it concluded arose under federal law by challenging the tariff.  Left only with what it considered to be a purely state law matter, the court declined to exercise supplemental jurisdiction over Count A and remanded it to state court.

---

[2] The filed-rate doctrine, also known as the filed-tariff doctrine, prohibits suits that would have the effect of altering the rates set forth in a carrier's filed tariff. Bryan, 377 F.3d at 429.

On March 10, 2003, BellSouth appealed from the portion of the court's Order denying dismissal of Count A and remanding it to state court. BellSouth argued that Count A also challenged the tariff, arose under federal law, and should have been dismissed as barred by the filed-rate doctrine. While on appeal, the action on the remanded UDTPA claim proceeded in the Superior Court of Guilford County. On August 8, 2003, Bryan filed a Second Amended Complaint in that court. On April 28, 2004, stipulated orders were entered in state court staying those proceedings until October 16, 2004.

On February 24, 2004, the Fourth Circuit heard oral arguments of the parties. A majority of the circuit court panel agreed with BellSouth. On July 28, 2004, the Fourth Circuit vacated the district court's February 6, 2003 Order with respect to Count A and remanded the case to the district court with instructions to dismiss. On October 13, 2004, BellSouth filed a motion for entry of final judgment in district court. On November 15, 2004, Bryan filed a motion for leave to file a second amended complaint.[3] On February 8, 2005, the district court denied Bryan's motion to file a second amended complaint and granted BellSouth's motion for entry of final judgment, dismissing Count A per the Fourth Circuit's instructions and dismissing the case with prejudice.

_____

[3] That complaint actually would have been Bryan's third amended complaint because Bryan already had filed a second amended complaint in state court.

4

On March 18, 2005, BellSouth filed a motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) in the Superior Court of Guilford County, asserting that the state action was barred by the principles of res judicata and collateral estoppel. Alternatively, BellSouth argued that, by virtue of the district court's vacated remand Order, the state court no longer had jurisdiction over the matter. On May 6, 2005, the Superior Court of Guilford County denied BellSouth's motion to dismiss. BellSouth subsequently filed a protective notice of appeal with the Court of Appeals of North Carolina.

This matter is before the court on BellSouth's Motion for Permanent Injunction and Bryan's Motion to Dismiss Defendant's Motion for Permanent Injunction.

DISCUSSION

I.   BellSouth's Motion for Permanent Injunction

     A.   Anti-Injunction and All Writs Acts

     The Anti-Injunction Act provides that a "court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Act absolutely prohibits "enjoining state court proceedings, unless the injunction falls within one of the three specifically defined exceptions." Atl. Coast Line R.R. v. Locomotive Eng'rs, 398 U.S. 281, 286-87

5

(1970); see also Bluefield Cmty. Hosp., Inc. v. Anziulewicz, 737
F.2d 405, 408 (4th Cir. 1984). "The exceptions are construed
narrowly, however, and are 'not [to] be enlarged by loose
statutory construction.'" Employers Res. Mgmt. Co. v. Shannon,
65 F.3d 1126, 1130 (4th Cir. 1995) (quoting Atl. Coast Line, 398
U.S. at 287)). Moreover, "the Act 'cannot be evaded' by framing
an injunction as a restraint on a party rather than directly on
the state court." Denny's, Inc. v. Cake, 364 F.3d 521, 528 n.8
(4th Cir. 2004) (quoting Atl. Coast Line, 398 U.S. at 287).

Specific reference to the Anti-Injunction Act, however, is
not required to qualify as an express authorization by Congress.
See Mitchum v. Foster, 407 U.S. 225, 237 (1972). The removal of
litigation from state to federal courts is among the Acts of
Congress in which the Supreme Court has found injunctive relief
available in order for legislation to be given the import and
scope intended by Congress.[4] See id. at 234-35 & n.12. In
addition, Congress added the phrase "in aid of its jurisdiction"
to the statute in 1949 "to make clear the recognized power of the
Federal courts to stay proceedings in State cases removed to the
district courts." Revisor's Note to 1948 Revision of
Anti-Injunction Act, 28 U.S.C. § 2283.

While the exceptions to the Anti-Injunction Act provide an
avenue around the Act's otherwise absolute prohibition, a federal

---

[4] The federal removal provisions provide that once a copy of
the removal petition is filed with the clerk of the state court,
the "State court shall proceed no further unless and until the
case is remanded." 28 U.S.C. § 1446(d).

court must also possess positive authority to enjoin state court proceedings.  Canady v. Allstate Ins. Co., 282 F.3d 1005, 1019-20 (8th Cir. 2002).  The All Writs Act provides that authority by empowering a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a); see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig., 134 F.3d 133, 143 (3d Cir. 1998)  ("If an injunction falls within one of [the exceptions to the Anti-Injunction Act], the All-Writs Act provides the positive authority for federal courts to issue injunctions of state court proceedings.").  The Act enables a federal court to "issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." Pa. Bureau of Corr. v. United States Marshals Serv, 474 U.S. 34, 40 (1985); Miller v. Brooks (In re Am. Honda Motor Co.) 315 F.3d 417, 437 (4th Cir. 2003).

An injunction issued pursuant to the authority granted by the All Writs Act "is not subject to the four-factor balancing test ordinarily applicable to preliminary injunctions." Scardelletti v. Rinckwitz, No. 02-1013, 2003 U.S. App. LEXIS 13500, at *12, n.3 (4th Cir. July 3, 2003); see also Miller, 315 F.3d at 442 (finding no abuse of discretion even though district court did not consider traditional four-prong analysis before issuing injunction under All Writs Act); Klay v. United

Healthgroup, Inc., 376 F.3d 1092, 1100 (11th Cir. 2004) (stating that to obtain an All Writs Act injunction, a party "must simply point to some ongoing proceeding, or some past order or judgment, the integrity of which is being threatened by someone else's action or behavior"); Harris v. Wells, 764 F. Supp. 743, 745 (D. Conn. 1991) (stating that availability of an All Writs Act injunction is determined by the standards under the Act and not by the traditional standards for injunctive relief).  An injunction under the All Writs Act does need to comply with the requirements of Federal Rule of Civil Procedure 65. Scardelletti v. Debarr, 265 F.3d 195, 212 (4th Cir. 2001),rev'd on other grounds by Devlin v. Scardelletti, 536 U.S. 1 (2002). Specifically, the order granting an injunction "shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained."  Fed. R. Civ. P. 65(d).


        B.    Fourth Circuit's Vacation of District Court's Order

        Having determined that a federal court has the authority to provide injunctive relief where removal has terminated the state court's jurisdiction, but the state court has not relinquished the suit, the court now must decide whether such a scenario exists in this case.  In doing so, the court has to grapple with the unusual procedural posture presented:  (1) Plaintiff filed suit in state court; (2) Defendant properly removed the suit to

                                    8

federal district court; (3) the federal district court dismissed Counts B and C and, declining to exercise supplemental jurisdiction, remanded Count A to state court; (4) Defendant appealed the federal district court's remand Order to the Fourth Circuit; (5) while on appeal, the suit proceeded in state court during which time the Complaint was amended; (6) over a year after the federal district court remanded the remaining claim, the Fourth Circuit vacated the district court's Order with instructions to dismiss the remaining claim; (7) the federal district court, per those instructions, dismissed the entire suit with prejudice; (8) Defendant filed a motion to dismiss in state court, noting the federal district court's final judgment; and (9) the state court denied Defendant's motion.

In returning to this court for injunctive relief, Defendant argues that the state court proceedings are a nullity and that, alternatively, Bryan's suit is barred by claim and issue preclusion. The court agrees with Defendant's first contention and, therefore, need not reach the preclusion arguments.

"The right to remove a case from state to federal court derives solely from 28 U.S.C. § 1441." <u>Mulcahey v. Columbia Organic Chems. Co.</u>, 29 F.3d 148, 151 (4th Cir. 1994). A defendant may remove from state to federal court "any civil action brought in a state court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). District courts are granted "original jurisdiction of all civil actions arising under the Constitution, laws, or

9

treaties of the United States." 28 U.S.C. § 1331. "A proper filing of a notice of removal immediately strips the state court of its jurisdiction," Yarnevic v. Brink's, Inc., 102 F.3d 753, 754 (4th Cir. 1996), and "the State court shall proceed no further unless and until the case is remanded." 28 U.S.C. § 1446(d); see also Maseda v. Honda Motor Co., 861 F.2d 1248, 1254-55 (11th Cir. 1988) (citing Steamship Co. v. Tugman, 106 U.S. 118, 122 (1882) ("[A]fter removal, the jurisdiction of the state court absolutely ceases and the state court has a duty not to proceed any further in the case. Any subsequent proceedings in state court on the case are void ab initio.").

In the case at bar, neither the propriety of the suit's initial removal, nor the proceedings of the state court between removal and remand are in dispute. The controversy in this case centers around (a) the effect of the Fourth Circuit's vacation of this court's Order remanding Count A to the state court in relation to (b) the proceedings that took place in state court in the interim between those two decisions. Although no circuit has directly addressed this point, the Fifth Circuit contemplated such a scenario in Sykes v. Tex. Air Corp., 834 F.2d 488, 490-91 (5th Cir. 1987). Underscoring the strong congressional policy against review of remand orders, the Fifth Circuit lamented that, "[i]f months or years later a federal Court of Appeals decides that the remand was improper, matters are thrown into confusion and the effort expended by the parties on the state court

10

proceeding (along with a good deal of state judicial resources) is in jeopardy." Id. at 490.

The court elaborated that:

> [a]ppellate review of remand orders . . . is necessarily inefficient because of its peculiar binary quality: Either the remand is affirmed, in which case the appeal itself was a waste because it had no effect on the on-going state case; or the remand is reversed, in which case progress made in the state court proceedings may be nullified.

Id. at 491; see also Hernandez v. Brakegate, Ltd, 942 F.2d 1223, 1226 (7th Cir. 1991) ("Remands are effective immediately, so state courts may get back to work on the cases. An appellate order a year or more later may render this effort wasted."). In cases where remand is reversed or vacated, state court proceedings are not automatically nullified because federal courts are still obligated to grant "full faith and credit" to prior state court final judgments as well as intermediate judgments that are final in effect. See 28 U.S.C. § 1738; Parsons Steel, Inc. v. First Ala. Bank 474 U.S. 518, 524 (1986) ("once the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and federal courts must turn to state law to determine the preclusive effect of the state court's decision"); see also Gates, Hudson & Assocs. v. Banks 1999 U.S. App. LEXIS 8341, *1-2 (4th Cir. Apr. 30, 1999) (citing Sykes for its discussion of the "'peculiar' quality of appellate review of remand orders" and acknowledging that full faith and credit would apply to state court's final judgment).

11

Under N.C. Gen. Stat. § 1A-1, Rule 54(a), "a judgment is either interlocutory or a final determination of the rights of the parties," and "a final judgment is one which disposes of the cause as to all parties, leaving nothing to be judicially determined between them in the trial court." Hinson v. Hinson, 17 N.C. App. 505, 508-09, 195 S.E.2d 98, 100 (1973). In the case at bar, the state court made two material decisions in this case since the district court's remand order: the first allowed Bryan to file an amended complaint in state court,[5] and the second denied BellSouth's motion to dismiss pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(6). The former occurred prior to the Fourth Circuit's vacation order, and the latter occurred after, but that temporal distinction is superfluous because neither is considered a final judgment under North Carolina state law. See Estate of Spell v. Ghanem, 622 S.E.2d 725, 727 (N.C. Ct. App. 2005) (holding that an order allowing amendment of plaintiffs' complaint is interlocutory); Capps v. NW Sign Indus. of N.C., Inc., 171 N.C. App. 409, 411, 614 S.E.2d 552, 555 (N.C. Ct. App. 2005), vacated on other grounds by 627 S.E.2d 614 (N.C. 2006) (stating that denying a motion to dismiss is not a final determination as to the rights of the parties involved in the litigation). Therefore, this court does not owe "full faith and credit" to either of these state court decisions.

---

[5] It is not clear from the record whether Bryan amended by right or by leave of court. For purposes of this opinion, the court will assume that Bryan amended her Complaint by leave of the state court.

In the absence of such an obligation, the court finds that the vacation of its February 6, 2003 remand Order renders all state court proceedings since then a nullity in the case at bar. On a conceptual level, the "vacation of the judgment or order of the court below generally deprives such judgment or order of any effect." 5 Am. Jur. 2d <u>Appellate Review</u> § 846 (2006). Common usage of the term "vacate" indicates as much. <u>See</u> <u>Black's Law Dictionary</u> (8th ed. 2004) (defining vacate as "[t]o nullify or cancel; make void; invalidate"); <u>Webster's Ninth New Collegiate Dictionary</u> (1989) (defining vacate as "to make legally void; annul"). Case law is consistent with these conceptions. <u>See</u> <u>United States v. Ayres</u>, 76 U.S. (9 Wall.) 608, 610 (1869) ("the order granting the new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place"); <u>In re Hakim</u>, 244 B.R. 820, 821-22 (Bankr. N.D. Cal. 1999) (noting that when an order of dismissal is vacated, all of its effects are vacated). For example, when presented with a case that is rendered moot while on appeal, appellate courts traditionally vacate the judgment below in order to wipe the slate clean and remove any precedential effect. <u>Md. Highways Contractors Ass'n v. Maryland</u>, 933 F.2d 1246, 1250 (4th Cir. 1991) (citing <u>United States v. Munsingwear</u>, 340 U.S. 36, 39 (1950)); <u>Troy State Univ. v. Dickey</u>, 402 F.2d 515, 517 (5th Cir. 1968). As the Fifth Circuit stated in <u>Falcon v. General Telephone Co.</u>, "when a judgment is vacated all is effectually

13

extinguished." 815 F.2d 317, 320 (5th Cir. 1987) (internal
quotation marks omitted).

Because the vacation of this court's remand order results in
the order having no effect, (1) the case at bar was never
remanded, (2) the state court lacked subject matter jurisdiction
over the proceedings, and (3) every order made in the state court
is void ab initio. See Steamship, 106 U.S. at 122. As discussed
in Sykes, the availability of appellate review of remand orders,
although limited, creates the potential for waste of resources on
both the part of the state court and the parties. The most
commonly suggested remedy is a stay of state court proceedings
while the appeal is pending. See Stephens v. Am. Home Assurance
Co., 811 F. Supp. 937, 957 (S.D.N.Y. 1993) (listing cases). The
difficulty is in convincing a court to implement that remedy.
The court in Sykes opined that finding a district court so
uncertain of a decision that it would stay its order to remand is
highly unlikely.[6] 834 F.2d at 490. Hopefully, as a review of
the case law indicates, the confluence of events presented here
will remain rare. Nevertheless, in this instance, these events
require a finding in favor of BellSouth.


II. Bryan's Motion to Dismiss

---

[6] For example, in this case, the dissenting Fourth Circuit
judge agreed with the district court that Count A did not arise
under federal law and believed that remand of that matter to
state court was proper. Moreover, motions to stay state court
proceedings during the pendency of BellSouth's appeal were denied
at least once by every court involved.

14

In response to BellSouth's effort to enjoin Plaintiff from pursuing her case in state court, Bryan offers multiple grounds upon which the court should dismiss or deny BellSouth's motion. First, Bryan argues that the court lacks subject matter jurisdiction to hear BellSouth's motion. Second, Bryan claims that BellSouth's motion ought to be treated as a new complaint and, as such, dismissed for insufficiency of both process and service of process. Third, Bryan asserts that BellSouth has failed to state a claim upon which relief can be granted. Finally, Bryan contends that notions of comity and tenets of the Anti-Injunction Act instruct that BellSouth's motion should be denied. The court will address these arguments seriatim.

A.   <u>Lack of Subject Matter Jurisdiction</u>

"The burden of proving subject matter jurisdiction on a motion to dismiss is on . . . the party asserting jurisdiction." <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982). The district court, however, should grant a Rule 12(b)(1) motion to dismiss "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." <u>Richmond, Fredericksburg & Potomac R.R. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991). As Bryan correctly points out, the All Writs Act does not independently confer subject matter jurisdiction on federal courts. <u>Miller</u>, 315 F.3d at 437 (citing <u>Syngenta Crop Protection, Inc. v. Henson</u>, 537 U.S. 28 (2002)).

15

Nor does qualifying for an exception to the Anti-Injunction Act
fulfill any jurisdictional requirement. See Smith v. Apple, 264
U.S. 274, 278 (1924).

   "It is well-settled that a federal court may exercise
ancillary jurisdiction to enforce its judgments." Marino v.
Pioneer Edsel Sales, Inc., 349 F.3d 746, 752 (4th Cir. 2003)
(citing Peacock v. Thomas, 516 U.S. 349, 354 (1996)).  While a
federal court has the power to enforce its decisions, the Supreme
Court has cautioned against the exercise of ancillary
jurisdiction "over proceedings that are entirely new and
original." Peacock, 516 U.S. at 358 (citation and internal
quotation marks omitted).  Ancillary jurisdiction "may extend to
claims having a factual and logical dependence on the primary
lawsuit, . . . but that primary lawsuit must contain an
independent basis for federal jurisdiction." Id. at 355
(citation and internal quotation marks omitted); see also 17
Charles Alan Wright & Arthur R. Miller, Federal Practice and
Procedure § 4226 (2d ed. 1988) (stating that, in the context of
the relitigation exception, the jurisdiction that the federal
court had when it entered its original judgment is enough to
support its issuance of an injunction).

   For example, the Supreme Court in Kokkonen v. Guardian Life
Ins. Co. concluded that enforcement of a settlement agreement was
not dependent upon the dismissed suit and required independent
jurisdiction.  511 U.S. 375, 378 (1994).  In reaching that
decision, the Court recognized two purposes for which it had

16

"exercised ancillary jurisdiction in the past: '(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, . .    . ; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'" Marino, 349 F.3d at 752 (quoting Kokkonen, 511 U.S. at 379-80). As the Supreme Court stated in Local Loan Co. v. Hunt, 292 U.S. 234 (1934):

> That a federal court of equity has jurisdiction of a
> bill ancillary to an original case or proceeding in the
> same court, whether at law or in equity, to secure or
> preserve the fruits and advantages of a judgment or
> decree rendered therein, is well settled.  And this,
> irrespective of whether the court would have
> jurisdiction if the proceeding were an original one.
> The proceeding being ancillary and dependent, the
> jurisdiction of the court follows that of the original
> cause.

In the case at bar, the district court had original jurisdiction over the suit because two (later determined by the Fourth Circuit to be all three) of the counts in Bryan's Complaint raised federal questions, and the suit was properly removed to the district court.  Moreover, there is no question that BellSouth's motion for permanent injunction is factually and logically dependent upon the suit brought by Bryan against BellSouth.

"[A]ncillary jurisdiction exists in order that the court may do complete justice in the chief controversy." Coop. Transit Co. v. West Penn Elec. Co., 132 F.2d 720, 723 (4th Cir. 1943). Complete justice includes enforcing an Act of Congress – that act, in this case, being Section 1446(d) of Title 28, which

17

provides that once removal is effected, the state court shall proceed no further. Although the suit was remanded and state court jurisdiction revived, the Fourth Circuit's vacation of the remand order rendered all otherwise-valid state court proceedings void ab initio.[7] Because a suit exists in state court that never left the jurisdiction of this court after removal, this court can exercise ancillary jurisdiction to dispose of a factually interdependent claim, vindicate its authority, and protect its judgment.

B.    **Insufficiency of Process, Insufficiency of Service of Process, and Failure to State a Claim Upon Which Relief Can Be Granted**

Bryan also argues that BellSouth's Motion "is better characterized as a pleading." (Pl.'s Mem. Supp. Mot. Dismiss Def.'s Mot. for Permanent Inj. (hereinafter "Pl.'s Mem. Supp.") at 8.) Bryan contends that: (1) "[o]nce this Court dismissed Plaintiff's First Amended Complaint and entered a Final Judgment, Plaintiff and Defendant were no longer parties before the Court," and (2) a "motion is an application for an order of relief in favor of the moving party to a lawsuit[;]" therefore, (3)

---

[7] A significant portion of Bryan's arguments are devoted to the contention that this court has no jurisdiction over and has never ruled upon her Second Amended Complaint filed in state court after remand but before vacation. To the extent that Bryan's argument might have merit in the context of issue or claim preclusion, it is nevertheless inapposite to this court's determination that all state court proceedings, both between remand and vacation as well as subsequent to vacation, are a nullity.

18

"[w]ithout a plaintiff or an existing lawsuit, or at least retention of jurisdiction by a federal court, there can be no motions." (<u>Id.</u>) Bryan's argument contains several flaws.

First, Bryan cites Federal Rule of Civil Procedure 7(b)(1) as direct support for her definition of a motion. Contrary to Bryan's proposition, the text of Rule 7(b)(1) does not make any reference to the term "lawsuit." The Rule simply states that "[a]n application to the court for an order shall be by motion which . . . shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought." Fed. R. Civ. P. 7(b)(1). Next, Bryan's line of reasoning appears to presuppose that this court lacks subject matter jurisdiction to hear BellSouth's Motion. According to Bryan, "BellSouth filed a motion in an action no longer before the Court – where no jurisdiction has been explicitly retained by the Court and no adjudication of property by the Court is threatened." (Pl.'s Mem. Supp. at 8.) As discussed in the previous section however, this court does have ancillary jurisdiction over the instant matter. Finally, Bryan's reasoning actually renders her Rule 12(b)(4), (5), and (6) arguments moot. If, on the one hand, the court found that no jurisdiction existed and, therefore, BellSouth's motion was actually a pleading, then the matter would already have been dismissed for lack of subject matter jurisdiction. If, on the other hand, the court concludes that jurisdiction exists (as it has done), then the motion is proper.

19

For all of these reasons, BellSouth was not required to
serve process in compliance with Federal Rule of Civil
Procedure 4.  In addition, having invoked the positive authority
vested in the All Writs Acts and having satisfied an exception to
the Anti-Injunction Act, BellSouth has stated a claim upon which
relief can be granted.


     C.   <u>Comity and the Anti-Injunction Ac</u>t

Integrated within her Motion to Dismiss, Bryan argues that
BellSouth's Motion ought to be denied because (1) she is not
pursuing any claims in the First Amended Complaint, (2) this
court has not ruled upon her Second Amended Complaint filed in
state court, and (3) the state courts are more than competent to
determine the preclusive effect of this court's Final Judgment.

As discussed in Part I.A., the purpose of the
Anti-Injunction Act is to prevent federal courts from enjoining
state court proceedings.  The Act's allowance for three narrow
exceptions, however, offsets some of the tension between the Act
and

> the unqualified terms in which Congress, pursuant to
> constitutional authorization, has conferred specific
> categories of jurisdiction upon the federal courts, and
> with the principle that "[w]hen a Federal court is
> properly appealed to in a case over which it has by law
> jurisdiction, it is its duty to take such
> jurisdiction."

<u>England v. La. State Bd. of Med. Exam'r</u>s 375 U.S. 411, 415

(1964) (quoting <u>Willcox v. Consol. Gas Co</u>., 212 U.S. 19, 40

(1909)); <u>see also</u> <u>County of Allegheny v. Frank Mashuda Co</u>, 360

U.S. 185, 188 (1959) (stating that abstention doctrine "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it") Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976) (noting the general rule that federal courts are bound by a "virtually unflagging obligation . . . to exercise the jurisdiction given them"). The obligation to exercise ancillary jurisdiction may not rise to the level of other jurisdictions granted to district courts. Still, a substantial duty exists, especially where the factors enunciated in Kokkonen are present. See 511 U.S. at 379-80.

According to Bryan, a permanent injunction would "usurp the state court's authority to litigate the state claims in the Second Amended Complaint" and "[t]o do so would violate principles of comity and the Anti-Injunction Act." (Pl.'s Mem. Supp. at 10.) In Younger v. Harris, the Supreme Court articulated that comity was a "vital" policy concern underpinning the prohibitions of the Anti-Injunction Act. 401 U.S. 37, 44 (1971). The Court elaborated on the notion of comity as:

> a proper respect for state functions, a recognition of
> the fact that the entire country is made up of a Union
> of separate state governments, and a continuance of the
> belief that the National Government will fare best if
> the States and their institutions are left free to
> perform their separate functions in their separate ways
> . . . . What the concept [represents] is a system in
> which there is sensitivity to the legitimate interests
> of both State and National Governments, and in which
> the National Government, anxious though it may be to
> vindicate and protect federal rights and federal
> interests, always endeavors to do so in ways that will
> not unduly interfere with the legitimate activities of

21

the States.

Id.

Had this matter turned on the issue of preclusion, the court would have been inclined, in an effort to avoid interfering with the "legitimate activities" of the state, to deny BellSouth's request for injunctive relief. Comity concerns for the activities of the state, however, are significantly lessened by the court's determination that those activities are null and without effect. See In re James, 940 F.2d 46, 52 (3rd Cir. 1991) ("vacating [a void] judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests"); see also Gonzales v. Parks, 830 F.2d 1033 (9th Cir. 1987) (holding the state court judgment void after determining that the jurisdictional basis of the state court action was lacking). Therefore, in this case, injunctive relief minimally offends notions of comity and federalism, while fulfilling the court's obligation to exercise its jurisdiction, vindicate its authority, and protect its judgments.

CONCLUSION

For the reasons set forth in this memorandum opinion, the court will deny Bryan's motion to dismiss. The court will grant BellSouth's motion to permanently enjoin Bryan from pursuing the

22

claims alleged in Count A of her First Amended Complaint[8] in the Superior Court of Guilford County or any other state court in North Carolina.  Likewise, Bryan will be permanently enjoined from pursuing the claims alleged in her Second Amended Complaint[9] in the Superior Court of Guilford County or any other state court in North Carolina.  Nothing in this opinion or the accompanying order should be construed as preventing Bryan from filing a lawsuit alleging another state law claim (one which avoids challenging the validity of a filed tariff) against BellSouth in state court.

An order and permanent injunction in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_____
United States District Judge

May 31, 2006

_____

[8] Bryan's First Amended Complaint is identified as the complaint filed in the United States District Court for the Middle District of North Carolina on June 4, 2002.

[9] Bryan's Second Amended Complaint is identified as the complaint filed in the Superior Court of Guilford County, North Carolina on August 8, 2003.

23